### UNITED STATES of America

v.

### Toney SABATER, Appellant.

### No. 10–3323.

United States Court of Appeals, Third Circuit.

Argued June 21, 2011.

Filed: Aug. 1, 2011.

James J. West, Esq. (Argued), James J. West, Harrisburg, PA, for Appellant.

Peter J. Smith, Esq., Christy H. Fawcett, Esq. (Argued), Theodore B. Smith, III, Esq., Office of United States Attorney, Harrisburg, PA, for Appellee.

Before: HARDIMAN, ALDISERT, Circuit Judges, and RESTANI,* Judge.

## OPINION

RESTANI, Judge.

Defendant Toney Sabater appeals the district court's decision denying his 28 U.S.C. § 2255 motion to vacate his sentence. [Blue 10; *United States v. Sabater*, No. 1:05–cr–00433–001, 2010 WL 2891510, at *1, 2010 U.S. Dist LEXIS 73226, at *2 (M.D.Pa. July 21, 2010).] Sabater alleges that he did not knowingly and voluntarily acquiesce to the appellate waiver in his plea agreement and that to enforce the waiver would constitute manifest injustice. [Blue 14, 18.] For the following reasons, we will affirm the district court's judgment.

Because we write for the parties, we recount only the essential facts and procedural history. In November 2005, Sabater was charged with conspiracy to distribute and possess with intent to distribute—as well as distribution and possession with intent to distribute—500 grams or more of cocaine hydrochloride. [Presentence Investigation Report ("PSR") ¶ 1.] In June 2006, Sabater signed a plea agreement whereby the Government dismissed the original charges and Sabater pled guilty to two superceding counts of interstate travel to facilitate drug trafficking with a maximum sentence of ten years. [Plea Agree-

---

* Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

ment, *United States v. Sabater*, D.C. 1–05–cr–00433–001, Docket No. 30, ¶¶ 1–2 (M.D.Pa.).] In exchange, Sabater waived his right to direct appeal or to collateral challenge of his conviction and sentence under 28 U.S.C. § 2255. [*Id.* ¶ 13; Blue 4.] At sentencing, in November 2006, the district court found Sabater's criminal history status to be VI rather than V based in part on a 1994 New Jersey conviction, yielding a sentencing guideline range of 92 to 115 months. [Blue 4; *Sabater,* 2010 WL 2891510, at \*3–4, 2010 U.S. Dist. LEXIS 73226, at \*10–11; see U.S. Sentencing Guidelines Manual Sentencing Table, *available at* http://www.ussc.gov/Guidelines/2010_guidelines/Manual_PDF/Chapter_5.pdf.] Sabater was sentenced to 115 months imprisonment and Sabater appealed under 18 U.S.C. § 3742. *See United States v. Sabater,* 270 Fed.Appx. 219, 220 (3d Cir.2008) (not precedential) (*"Sabater I "*). In March 2008, we held that the waiver was knowing and voluntary and that no manifest injustice was demonstrated by the facts before the court. *Id.* at 220–21.

In June 2008, the Superior Court of New Jersey vacated and dismissed the 1994 New Jersey conviction with prejudice. [App. at 66a–67a.] In July 2009, Sabater moved to vacate, set aside, or correct his sentence on the basis that he was prejudiced by ineffective assistance of counsel and that, despite the waiver, the vacatur of the New Jersey conviction should result in lowering his criminal history category from VI to V, and therefore he should be resentenced based on a guideline range of 84 to 105 months. [Blue 4, 10, 14; Red 4; *Sabater,* 2010 WL 2891510, at \*1, 2010 U.S. Dist LEXIS 73226, at \*2.] The dis-

trict court held that Sabater's actions were knowing and voluntary and noted that Sabater's sentence could take into account the vacated New Jersey conviction without creating manifest injustice. [*Sabater,* 2010 WL 2891510, at \*2, \*5, 2010 U.S. Dist LEXIS 73226, at \*5–6, 14–15.] Sabater now claims that the waiver was not knowing and voluntary and to enforce it would constitute manifest injustice.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and § 2255 to review the final judgment of a U.S. District Court. *United States v. Mabry,* 536 F.3d 231, 236 (3d Cir.2008). We review the legality of waivers of appeal de novo. *United States v. Khattak,* 273 F.3d 557, 560 (3d Cir.2001).

■ A defendant may waive the right to direct and collateral attack, provided the waivers are "entered into knowingly and voluntarily, and their enforcement does not work a miscarriage of justice." [1] *Mabry,* 536 F.3d at 237. "Knowing and voluntary" indicates that "the defendant actually *does* understand the significance and consequences" of the waiver and that "the decision is uncoerced." *Fahy v. Horn,* 516 F.3d 169, 185 (3d Cir.2008) (quoting *Godinez v. Moran,* 509 U.S. 389, 401 n. 12, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)) (internal quotation marks omitted). We have already held that Sabater knowingly and voluntarily waived his right to appeal. *Sabater I,* 270 Fed.Appx. at 221. Sabater signed the plea agreement and was specifically questioned about the agreement in court, where Sabater repeatedly responded in the affirmative, dispelling any concerns as to the legal terms used in the agreement. *Id.* at 220–21. A review of the plea agreement and Sabater's responses in court reveals no significant difference

---

1. Under our precedents, "manifest injustice" and "miscarriage of justice" have been used interchangeably. *See United States v. Gwinnett,* 483 F.3d 200, 205–06 (3d Cir.2007); *Lambert v. Blackwell,* 134 F.3d 506, 520–21 (3d Cir.1997); *Sabater I,* 270 Fed.Appx. at 220–21.

between his waiver of appeal rights and his waiver of the right to collaterally challenge his sentence. The waiver was therefore knowing and voluntary.

■ Sabater alleges that to enforce the waiver in the face of the vacated New Jersey conviction would constitute manifest injustice.[2] [Blue 14.] Manifest injustice is rarely established and is defined by:

> The clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Khattak,* 273 F.3d at 563 (quoting *United States v. Teeter,* 257 F.3d 14, 25–26 (1st Cir.2001)) (alteration in original).

No manifest injustice exists on the facts before us.[3] Sabater knowingly and voluntarily waived his appellate rights in exchange for a plea agreement that was not one-sided, and therefore not manifestly unjust to Sabater on such a basis.[4] The agreement waived the two original charges—conspiracy to distribute and possess with intent to distribute, and distribution and possession with intent to distribute 500 grams or more of cocaine hydrochloride, carrying a forty year maximum and a ten year minimum—and instead allowed Sabater to plead to two counts of a lesser offense with a maximum of ten years.[5] *See* 21 U.S.C.

---

2. Sabater argues that the Supreme Court's decision in *Johnson v. United States,* 544 U.S. 295, 298, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) should be interpreted to mean that successful collateral attacks on state convictions relied upon to enhance sentences require district courts to grant motions under § 2255 regardless of whether a waiver was signed. [*See* Blue 13–15.] In order to decide a statute of limitations issue, the Supreme Court stated that its precedents assumed that a defendant may collaterally challenge a federal sentence enhanced based on a later vacated state court conviction. *Johnson,* 544 U.S. at 302–03, 125 S.Ct. 1571. Whether or not *Johnson* provides guidance as to a guideline criminal history category based on a state conviction vacated in this type of circumstance, *Johnson* did not address resentencing where the defendant has waived all rights of appeal or collateral attack in a plea agreement.

3. *Sabater I* commented that, had Sabater been able to show egregious facts to constitute manifest injustice, the waiver would have been invalid. *See Sabater I,* 270 Fed.Appx. at 221. Even taking into account the cautions of *Sabater I,* Sabater has not alleged new facts that could constitute the manifest injustice necessary to his claim. We do not decide what those facts might be but observe Sabater has not alleged he was actually innocent of the New Jersey crime.

4. Sabater argues that his Sixth Amendment rights were violated due to ineffective assistance of counsel. [Blue 19–21.] Sabater contends that his counsel did not inform him or was not aware of the appellate waiver in the plea agreement and, therefore, manifest injustice occurred. [Blue 19–21.] Under *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must prove both that counsel did not provide "reasonable professional assistance" and that "[the defendant] was actually prejudiced by counsel's deficient performance." *Werts v. Vaughn,* 228 F.3d 178, 203 (3d Cir. 2000) (internal quotation marks omitted) (citing *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052). To the extent this claim was not disposed of by our previous ruling, Sabater has not demonstrated ineffective assistance of counsel because there is no indication that he ought to have rejected the plea agreement and that the attorneys' advice to accept the agreement was not reasonable, or that he was prejudiced.

5. Although the Government and the presentence investigation report maintain that Sabater would have faced a mandatory minimum of ten years under the original indictment, Sabater might have faced a mandatory minimum of twenty years because Sabater committed the offense in the instant case "after a prior conviction for a felony drug offense ha[d] become final." 21 U.S.C.

§ 841(b)(1)(B). [;PSR ¶ 54; Red 22; Plea Agreement, *United States v. Sabater*, D.C. 1–05–cr–00433–001, Docket No. 30, ¶ 1 (M.D.Pa.).] Although Sabater's bargaining power may have been greater absent the New Jersey conviction, such a circumstance is not sufficient to meet the stringent manifest injustice standard. Further, the record indicates that the possibility of vacation of the New Jersey sentence based on claims of racial profiling at the time the crime was committed in New Jersey was known at the time of the plea. [App. at 56a.] No exception to the waiver for such a claim was included in the agreement. Finally, the ultimate sentence received is similar to the guideline sentence for which Sabater would have been eligible had the New Jersey conviction been vacated prior to federal sentencing.[6] In sum, there are no facts here that support a conclusion that enforcement of the waiver created a manifest injustice. Accordingly, we will affirm the district court's judgment.

ALDISERT, Circuit Judge, dissenting.

Would it be a miscarriage of justice to deny a criminal defendant the opportunity to correct a sentence enhancement for which he no longer qualifies because he waived his right to seek collateral review? The majority answers in the negative. Because I believe otherwise, I respectfully dissent.

In circumstances without a waiver, the Supreme Court has observed that "a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." *Johnson v. United States*, 544 U.S. 295, 303, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005). To reduce a no-longer valid enhancement, a prisoner should "proceed under [28 U.S.C.] § 2255 after successful review of the prior state conviction on federal habeas under [28 U.S.C.] § 2254 or favorable resort to any postconviction process available under state law." *Id.* at 304, 125 S.Ct. 1571; *see also id.* at 313, 125 S.Ct. 1571 (Kennedy, J., dissenting) ("Congress did not expect federal sentences to be enhanced irrespective of the validity of the state conviction relied upon for the enhancement. . . . [T]he proper procedure for reducing a federal sentence enhanced on the basis of an invalid state conviction is to seek a vacatur of a state conviction, and then proceed through federal habeas."). In light of his vacated state conviction,[1] Sabater no longer qualifies for the career offender enhancement he received. He has filed a habeas petition seeking to correct the enhancement. No one questions that Sabater has followed the Supreme Court's procedural guidance. What obstructs his otherwise clear path to seeking a sentence correction

---

§ 841(b)(1)(B). [;PSR ¶ 32.] Sabater also may have faced a maximum sentence of life in prison under the same provision. *Id.* The Government did not file the necessary documents to request this enhanced sentence.

6. The district court may arrive at a particular sentence for a variety of reasons and the plea agreement did not bind the court in sentencing. For example, because the conviction was vacated based on a general policy decision rather than some factor relating to Sabater's innocence, it is possible the district court might have found that criminal history level V was understated.

1. Sabater's state conviction was vacated based on a claim of racial profiling, which the State of New Jersey did not defend. Although not vacated as a result of actual innocence, his conviction was vacated on the basis of an alleged (and undefended) serious constitutional violation. *Cf. Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir.2010) (considering a Fourteenth Amendment claim of selective enforcement arising from a New Jersey conviction vacated as a result of alleged racial profiling).

is his Plea Agreement's waiver of his right to seek collateral review.

When we considered Sabater's direct appeal, we stated: "As Sabater validly waived his right to the present appeal and Sabater has not shown that a manifest injustice will result from enforcing the waiver, we decline to consider the merits of Sabater's appeal." *United States v. Sabater*, 270 Fed.Appx. 219 (3d Cir.2008). I agree with the majority that the voluntariness of his waiver remains the law of the case. I cannot agree, however, with the majority's statement that "Sabater has not alleged new facts that could constitute the manifest injustice necessary to his claim." Maj. Op. at 71 n. 3. Sabater has alleged a new fact: since we considered his appeal, a state conviction on which his federal sentence was enhanced has been vacated. Given this intervening event, I believe that enforcing the waiver would cause a manifest injustice.

The "miscarriage of justice" exception exists to "capture any truly deserving case." *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir.2001); *accord United States v. Khattak*, 273 F.3d 557, 562–563 (3d Cir. 2001) (endorsing the approach in *Teeter*). "[W]aivers are meant to bring finality to proceedings conducted in the ordinary course, not to leave acquiescent defendants totally exposed to future vagaries (however harsh, unfair, or unforeseeable)." *Teeter*, 257 F.3d at 25.

In this case, Sabater presents indisputable evidence that he no longer qualifies for the career offender enhancement. He does not seek to unwind his guilty plea, but instead to enforce his deal on the right facts (i.e., be sentenced as a non-career offender). Because—in circumstances without a waiver—denying a defendant the opportunity to remedy a no-longer-valid sentence enhancement through § 2255 would be "a fundamental defect which inherently results in a complete miscarriage of justice," *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Johnson*, 544 U.S. at 303–304, 125 S.Ct. 1571, his predicament is significantly more than "insubstantial," *United States v. Mabry*, 536 F.3d 231, 243 (3d Cir.2008) (enforcing a waiver when the defendant raised only "insubstantial" issues). To enforce the waiver in this case is to countenance the 10 to 35 months' additional incarceration[2] of an individual based on a Sentencing Guidelines enhancement that is no longer applicable as a result of a state conviction vacated pursuant to a claim of racial profiling. Under these circumstances, I believe that enforcing Sabater's waiver of collateral review is a manifest injustice.

---

**2.** Sabater had a criminal history category of V, based in part on a subtotal criminal history score of seven. As a result of qualifying as a career offender, his criminal history category was automatically raised to VI under U.S.S.G. § 4B1.1(b). His now-vacated prior conviction would have two effects: first, he would no longer qualify as a career offender, and second, his subtotal criminal history score of seven would be reduced to four. A criminal history score of four would result in a level IV criminal history category. Note 6 of the § 4A1.2 commentary would allow the Court to raise his score from four back to seven, but it would *not* allow the Court to reinstate a career offender enhancement. At most, therefore, Sabater would have a criminal history category of V, not the VI that the career offender enhancement landed him.